257 N.J. Super. 132 (1992)
608 A.2d 1
RICHARD PEPRAH, PLAINTIFF,
v.
AMERICAN SUZUKI MOTOR CORP, SUZUKI MOTOR CO., LTD., SUZUKI OF AMERICA AUTOMOTIVE CORPORATION, U.S. SUZUKI MOTOR CORPORATION, BELL SUZUKI, FREDERIC L. MARCUS, PENN NATIONAL MUTUAL CASUALTY CO., RODNEY C. JONES, NEW JERSEY FULL AUTO INSURANCE UNDERWRITING ASSOCIATION (JUA) AND/OR MARKET TRANSIT FORMATION (MTF), JOHN DOE II-X AND JANE ROE I-X, SAID NAMES BEING FICTITIOUS, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
April 10, 1992.
*133 Steven J. Greenstein for Plaintiff (Shevick, Ravich, Koster, Tobin, Oleckna & Reitman, Attorneys.)
Eric A. Weiss for Defendants American Suzuki Motor Corp. and Suzuki Motor Co., Ltd. (Liebert, Short & Hirshland, Attorneys.)
Michael S. Miller for Defendant Frederic L. Marcus (Tompkins, McGuire & Wachenfeld, Attorneys.)
Thomas J. Taylor for Defendant Penn National Mutual Casualty Company (Siegel & Siegel, Attorneys.)
ROSEMARY HIGGINS CASS, J.S.C.
Before me is a motion for summary judgment by co-defendant Penn National Mutual Casualty Company (hereinafter Penn National) in the above captioned matter. At issue is whether the phrase "claims or policies written by the association" within N.J.S.A. 17:30E-7(e) affords immunization from liability to servicing carriers of the New Jersey Automobile Full Insurance Underwriting Association (hereinafter NJAFIUA) for all claims, whatever their nature, or from claims arising from the policy only.
*134 The case arises from a motor vehicle accident on or about April 21, 1989 which occurred in Newark, New Jersey. The plaintiff, Richard Peprah, was operating a Suzuki Samurai vehicle and was involved in a collision with a vehicle operated by co-defendant Rodney C. Jones. As a result of the accident, plaintiff suffered severe and extensive injuries. Plaintiff instituted suit against several defendants including American Suzuki Motor Corporation, Suzuki Motor Co., Ltd., Frederic L. Marcus, Esq. and Penn National.
Penn National moves for summary judgment based upon provisions of N.J.S.A. 17:30E-7(e) as Penn National is a "servicing carrier" for NJAFIUA and as such is not held to any "individual" liability on claims or policies written by the NJAFIUA. However, plaintiff's theory of liability against Penn National is that Penn National negligently permitted the Suzuki vehicle to be lost and/or wrongfully disposed of without plaintiff's consent. Thus, plaintiff's theories against Penn National are based upon independent tortious acts performed by Penn National.
The dispute, then, focuses upon whether N.J.S.A. 17:30E-7(e) insulates Penn National from liability for tortious and other acts, or simply from claims arising from the policy.
Although its legislative history does not address the narrow issue as stated above, i.e., whether "or" is disjunctive rendering "claims" and "policies" distinct so as to give the statute very broad coverage, interpretive case law and well-settled agency law accord in the view that N.J.S.A. 17:30E-7(e) affords immunity from liability to servicing carriers for claims arising under the policie(s) and not for all claims.
N.J.S.A. 17:30E-7, in relevant part, provides:
Pursuant to the plan of operation, the association shall have the power and duty to:
* * * * * * * *
(e) Arrange for the issuance of automobile insurance to any qualified applicant through servicing carriers. Each servicing carrier shall issue policies in *135 the name of the servicing carrier, on behalf of the association, to the extent the plan of operation provides. Servicing carriers, as agents of the association, shall have no individual liability for claims or policies written by the association: (emphasis added).
* * * * * * * *
The question I must address is whether "claims or policies written by the association" affords servicing carriers of the association immunity from liability for all types of claims, or immunity only from liability for claims (arising out of policies) written by the Association. In particular, are servicing carriers for the Association immune from liability for unrelated torts such as conversion, assault, battery, and the like, merely because they are servicing carriers?
With respect to the instant issue, no case law exists with holding(s) directly on point; however, two cases in particular touch upon the within statutory provision.
In Bidnick v. Hanover Ins. Co., Inc., 230 N.J. Super. 111, 552 A.2d 1023 (App.Div. 1989), the insured filed a complaint for declaratory judgment seeking compensatory damages under the policy issued by a servicing carrier on behalf of the NJAFIUA. The issue before the Appellate Division was whether a servicing carrier had grounds to rescind an insurance policy issued by a servicing carrier pursuant to the New Jersey Full Insurance Availability Act after the carrier learned that the insured falsely represented he was a New Jersey resident. The court concluded that the carrier properly rescinded the policy. Id. at 113, 552 A.2d 1023.
In its discussion, the court directed its attention to N.J.S.A. 17:30E-1, et seq. and in particular to N.J.S.A. 17:30E-7(e). In a footnote at 114, the court stated:
Under N.J.S.A. 17:30E-7(e), the servicing carrier has no liability for claims under Association policies. That section of the Act provides servicing carriers, as agents of the Association, shall have no individual liability for claims or policies written by the Association. Accordingly, only the Association is subject to judgments arising from claims on Association policies issued by a servicing carrier. (emphasis added).
*136 It is clear from the language used in the above passage that the court, without hesitation, interpreted N.J.S.A. 17:30E-7(e) to insulate servicing carriers from liability for claims "under" or "arising from" Association policies. In fact, the court takes the literal wording of the statute and discusses it, as above, by paraphrasing with the terms "under" and "arising from" Association policies. Thus, it is a legitimate inference that the Appellate Division, in its wisdom, has decided that the intent of N.J.S.A. 17:30E-7(e) is to insulate servicing carriers only from claims arising from policies written on behalf of the Association.
In addition, in Knox v. State Farm Ins. Co., 698 F. Supp. 582 (E.D.Pa. 1988), the United States District Court, applying New Jersey law on cross motions for summary judgment, held that the insurance company therein, as a servicing carrier, was not liable for any claims made under the policy.
In its analysis, the court noted that the NJAFIUA insured plaintiffs' vehicle under a policy governed by the New Jersey Automobile Full Insurance Availability Act, N.J.S.A. 17:30E-1, et seq. Id. at 585-586. The parties stipulated that State Farm Insurance Company was the servicing carrier which insured plaintiffs' vehicle. Id. at 586.
The court first cited verbatim, with emphasis upon the immunity from liability terminology, the provisions of N.J.S.A. 17:30E-7(e) and then held
Therefore, pursuant to N.J. Stat. Ann. 17:30E-7(b)(e), State Farm, as the servicing carrier for the New Jersey Automobile Full Insurance Underwriting Association, is not liable for any claims made pursuant to [the policy]. (emphasis added. Id.)
The court concluded its opinion with the following:
Since State Farm is not liable as the servicing carrier for the Association for any claims made pursuant to [the policy], judgment must be entered in favor of State Farm. Although this may seem a harsh result, as we interpret the clear meaning of the words of the contract of insurance, we note that plaintiffs are not left without recourse. Under N.J. Stat.Ann. 17:30E-7(b), plaintiffs may bring suit against the New Jersey Automobile Full Insurance Underwriting Association. Id.

*137 Therefore, as in Bidnick, the court in Knox interprets N.J.S.A. 17:30E-7(e) as granting immunity from liability to servicing carriers for claims pursuant to policies issued on behalf of the Association. The Knox court also noted that where the servicing carrier enjoys immunity from liability for the reasons discussed above, plaintiffs are not left without recourse in that they may bring suit against the Association. Id. at 586.
In essence, the only case law interpreting N.J.S.A. 17:30E-7(e) suggests that the immunity from liability as per the statute is not for all claims, but only for claims arising from, under, or pursuant to the policy.[1] In fact, the headnote in Knox, although not part of the court's opinion, summarizes the court's holding by describing the immunity from liability being for claims made "under" the policy. Id. at 582.
In addition to case law, basic legal principles are analogous to the within issue. The law of agency is well settled in New Jersey. "A principal is accountable for the authorized acts of his agent and for any acts which he may have ratified." Kugler v. Romain, 110 N.J. Super. 470, 479, 266 A.2d 144 (Ch.Div. 1970), aff'd as modified and cause remanded, 58 N.J. 522, 279 A.2d 640 (1971). "Normally, a principal is responsible for the actions of an agent who is acting within the scope of his authority." Arthur v. St. Peter's Hospital, 169 N.J. Super. 575, 579, 405 A.2d 443 (Law Div. 1979), citations omitted. See also Restatement, Agency 2d. "Because [t]he servicing carrier is nothing more than an agent for the Association," Bidnick, 230 N.J. Super. at 115, 552 A.2d 1023, the aforementioned agency principles apply. Therefore, if a servicing carrier acts outside the scope of its duties or obligations, the law of agency dictates that it may be held liable, individually, and that the principal is absolved from liability for the particular act. Torts *138 such as conversion, spoilation of evidence, assault, battery and the like are clearly outside the intended scope of duties of a servicing carrier for the Association. Accordingly, I hold that servicing carriers may be held liable individually under N.J.S.A. 17:30E-7(e) for claims not arising directly from policies written on the Association's behalf.
Therefore, Penn National's motion for summary judgment is denied.
NOTES
[1] Note in this sentence that "or" connects synonyms; therefore, the use of "or" does not necessarily imply a disjunctive or mutually exclusive interpretation (as in N.J.S.A. 17:30E-7(e)).