Rhoads  v.  Pottsville  Hospital

C.P. of Schuylkill County, no. S-1795-1995.

*Nicholas A. Quinn,* for plaintiffs.
*Joseph A. Ricci,* for defendant hospital.
*John Q. Durkin,* for defendants Narmi and Slimmer.
*Joseph L. Feliciani,* for defendant Concord-Portex.

BALDWIN, *J.,* March 19, 1996—The plaintiffs Karla and Victor Rhoads filed a complaint on September 15, 1995, naming as defendants The Pottsville Hospital and Warne Clinic, Dr. Jeffrey Narmi, Dr. Samuel Slimmer and Concord-Portex. Count II of the complaint alleges medical malpractice against the physicians and the hospital; Counts III and IV allege claims of fraud and misrepresentation and assault and battery against the hospital; Count V alleges a claim for destruction of

evidence against the hospital; Counts VI and VII are claims against the hospital for invasion of privacy and intentional infliction of emotional distress; and Count VIII is a claim against all parties by Victor Rhoads for loss of consortium. The physician defendants have filed preliminary objections in the nature of a demurrer to Counts II and VIII, and the hospital has filed preliminary objections in the nature of a demurrer to Counts II, III, IV, V, VI, VII and VIII. Those preliminary objections are currently before the court for disposition.

A preliminary objection in the nature of a demurrer admits all well-pleaded facts and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged complaint and will be sustained only in those cases where the pleader has clearly failed to state a claim for which relief may be granted. Any doubt must be resolved in favor of the plaintiff. *Creeger Brick and Building Supply Inc. v. Mid-State Bank and Trust Co., SEDA,* 385 Pa. Super. 30, 560 A.2d 151 (1989).

Plaintiff Karla Rhoads alleges that on October 5, 1993, she was working on the third floor of The Pottsville Hospital as a respiratory therapist-employee of the hospital when she received a call that she was needed in the emergency room. When she arrived at the emergency room, Dr. Narmi instructed her to perform a breathing treatment on a patient and to do an arterial blood gas sampling. This involved taking blood from an artery in the patient's wrist. The plaintiff used a blood gas kit manufactured by Concord-Portex to withdraw the blood. She drew the blood as per the instructions, having performed the procedure over 100 times in the past. This time the patient's blood splattered into the plaintiff's eyes, tear ducts, nostrils and mouth, allegedly due to a defect in the arterial blood gas kit.

She placed the kit in the emergency room disposal container for used syringes and needles and returned to her third floor station to wash off the blood.

About 30 minutes later she was called back to the emergency room to perform medical procedures on another patient. At this time other nurses told her that the patient on whom she had performed the arterial blood gas sampling was HIV positive. After attempting to organize her thoughts and compose herself, she located the assistant supervisor of her section, who directed her on the procedure used when infected blood has been ingested. She alleges that at this moment the hospital ceased acting as her employer and became her caretaker and medical provider.

The supervisor instructed her to return to the emergency room to complete an incident report with the nurse manager. She then saw Dr. Narmi, but he failed to give her any treatment, only handing her a hospital pamphlet about HIV virus. Dr. Narmi then went off duty and Dr. Slimmer became the emergency room physician-in-charge.

The nurse manager informed the plaintiff that Dr. Slimmer insisted her blood work be obtained. She claims that the manager, on orders from Slimmer, deceitfully and fraudulently told her that this test was needed for the sole purpose of ascertaining whether or not she had become infected with HIV; but that this was a fabrication, and the real reason for obtaining the test was to see if she was already HIV positive prior to the incident. The hospital released her without any counseling, medications, referral to an infectious disease specialist, and without a hepatitis screening.

The next day the plaintiff was contacted by the hospital's infection control/health coordinator who told her to return to the hospital to discuss a prescription for

AZT and to take a pregnancy test. A Dr. Kraus prescribed AZT, and the prescription was filled at the hospital pharmacy. The plaintiff claims that the AZT medication caused sickness, vomiting and loss of weight. She also claims that Dr. Slimmer treated her during subsequent visits to the hospital and that he showed a lack of knowledge as to HIV and AZT; that he did not obtain informed consent for the treatment prescribed by him, including the administering of the blood test and the drug AZT; that he failed to inform her of the experimental nature of the drug and its side effects; and that he failed to refer her to a psychologist for emotional counseling. The plaintiff consulted with another physician who was an infectious disease specialist, and that physician discovered that the patient whose blood had splashed on her had Hepatitis C. The physician then gave the plaintiff the necessary gamma globulin shots. It is alleged that these shots should have been given within six days of exposure, but because of the negligence of Dr. Slimmer and the hospital, the plaintiff did not receive the shots until three weeks after the incident. There is no allegation that the plaintiff contracted either HIV or hepatitis.

The physicians in their preliminary objections argue that the alleged injuries by the plaintiff are work-related and as such, her recovery is limited to compensation under the Workers' Compensation Act. They further argue that her claims are not sufficiently specific.

An employee injured at work is provided a remedy under the Workers' Compensation Act. 77 P.S. §1 et seq. The remedy provided under the Act is exclusive and in place of all other liability against the employer. 77 P.S. §481. The exclusivity of the remedy applies not only to the employer, but also to co-employees of that employer. 77 P.S. §72. Since the plaintiff alleges

that Dr. Narmi and Dr. Slimmer are employees of the hospital, if her alleged injuries are found to be work-related, her only remedy against her employer or her co-employees is under the Workers' Compensation Act in the absence of an intentional tort.

Although the plaintiff admits to being an employee of the hospital, she argues that when the assistant supervisor of the respiratory section directed her how to proceed with respect to the incident of ingesting the infected blood, the hospital ceased acting as her employer and became her medical provider. An employee's injury falls within the purview of the Workers' Compensation Act when the employee is injured while actually engaged in the furtherance of the employer's business or affairs. *Heimbach v. Heimbach,* 401 Pa. Super. 119, 121, 584 A.2d 1008, 1009 (1991), citing *W.C.A.B. (Slaugenhaupt) v. United States Steel Corp.,* 31 Pa. Commw. 329, 376 A.2d 271 (1977).

The plaintiff argues that she was not in the furtherance of her employer's business when she received treatment by the emergency room doctors and claims that the hospital was acting in a manner independent of its status as an employer when her injuries occurred. She refers to the "dual capacity" doctrine which provides an exception to employer immunity where an employer possesses a second persona so completely independent from and unrelated to the status as an employer that the employer may be vulnerable to suit by an employee. *Larsen, Workmen's Compensation Law,* §72.80 p. 14-229. She cites in support of her argument *Tatrai v. Presbyterian University Hospital,* 497 Pa. 247, 439 A.2d 1162 (1982), where a hospital employee became sick on the job and reported to the emergency room and then was injured by faulty equipment. The court concluded that workers' compensation was not her exclusive remedy.

To establish a prima facie case of negligence the plaintiff must allege a duty or obligation recognized by law; a breach of that duty by the defendant; a causal connection between the defendant's breach of that duty and a resulting injury to the plaintiff; and actual loss or damage suffered by the plaintiff. *Reilly v. Tiergarten Inc.,* 430 Pa. Super. 10, 633 A.2d 208 (1993). For a medical malpractice claim the plaintiff must allege a negligent or unskilled performance by a physician of the duties which are incumbent upon that physician because of relations with his patients, or the want of proper care and skill in the performance of a professional act. *Keech v. Mead Johnson and Co.,* 398 Pa. Super. 329, 335, 580 A.2d 1374, 1377 (1990), citing *Hodgson v. Bigelow,* 335 Pa. 497, 7 A.2d 338 (1939).

Count II is based on the plaintiff's exposure to AIDS and hepatitis and the mental distress it caused her. Pennsylvania courts have held that fear of developing a disease in the future is not a legally cognizable injury. In *Lubowitz v. Albert Einstein Medical Center,* 424 Pa. Super. 468, 623 A.2d 3 (1993), the court held that while the plaintiff is asymptomatic she cannot recover monetary damages for a risk or fear of developing AIDS in the future. In *Giffear v. Johns-Manville Corp.,* 429 Pa. Super. 327, 632 A.2d 880 (1993), the court held that a worker's fear of cancer due to his asymptomatic asbestos-related pleural thickening was not a legally cognizable injury. The court in that case explained that the judicial system must be based on proof, not mere speculation, and noted that the plaintiff was free to bring a future cause of action should he later develop cancer. Since the plaintiff in this case does not allege to have contracted AIDS or hepatitis, she cannot claim damages for her fears and the emotional problems stem-

ming from them because of the defendants' alleged failure to screen for those diseases.

Although the plaintiff has not stated a cause of action against the hospital and physicians for causing her emotional distress, we cannot say without doubt at this stage of the proceedings that she has failed to state a claim for their failure to refer her to a psychologist for treatment of her alleged emotional distress.

Intentional acts by employees do not receive immunity from tort liability under the Act. Plaintiff claims that Dr. Slimmer fraudulently induced her to take an AIDS test by saying that she needed the test to see if she was infected by ingesting the blood, when he was really trying to determine if she was already HIV positive. She also claims that the AZT drug was prescribed to her without its side effects being explained. These allegations do not support a cause of action under current Pennsylvania law since the courts have continuously held that the doctrine of informed consent applies only to surgical procedures. Blood tests [*Doe v. Dyer-Goode,* 389 Pa. Super. 151, 566 A.2d 889 (1989)] and the administering of therapeutic drugs [*Boyer v. Smith,* 345 Pa. Super. 66, 497 A.2d 646 (1985)] have been found to be outside the scope of this doctrine. Regarding the hospital's alleged liability, the Superior Court has held that it is the doctor, not the hospital who is in the best position to evaluate and explain the risk to the patient. The hospital is, therefore, not responsible for the doctor's actions under the informed consent doctrine. *Kelly v. Methodist Hospital,* 444 Pa. Super. 427, 664 A.2d 148 (1995).

We next turn to the plaintiff's claim for spoliation of evidence against the hospital. Plaintiff alleges that when she learned that she had been splattered with HIV positive blood, she sought to retrieve the blood

508

gas kit from the disposal container where she had placed it after the procedure. She further alleges that hospital personnel refused to allow her access to the container that day, and that when she returned the next day, she was told that the contents had been removed for disposal. Although the hospital cites OSHA regulations which allegedly require the disposal of biohazardous material, we will not consider that argument since we are reviewing this matter in response to the hospital's demurrer and can consider nothing outside of the plaintiff's complaint and an analysis as to whether that complaint states a viable cause of action on its face.

No Pennsylvania appellate court has recognized a cause of action for spoliation of evidence. See *Olson v. Grutza*, 428 Pa. Super. 378, 631 A.2d 191 (1993). However, two of our sister courts in Lebanon County and Dauphin County have embraced this new tort in opinions authored by the Honorable John A. Walter, P.J. and the Honorable Jeannine Turgeon, J., respectively. *Liebig v. Consolidated Rail Corp.*, 31 Leb. Co. Leg. J. 188 (1994) and *Taylor v. Johnson Products Co.*, 115 Dauph. Co. Rep. 398 (1995). As Judge Walter so ably recounts in his well-researched opinion in *Liebig*, our sister states which have considered the issue are divided in their recognition of a cause of action for spoliation of evidence. Alaska,[1] California,[2] Florida,[3] New Jersey[4] and North Carolina[5] have recognized a

1. *Hazen v. Anchorage*, 718 P.2d 456 (Alaska 1986).

2. *Smith v. Superior Court for the County of Los Angeles*, 151 Cal.App. 3d 498, 198 Cal.Rptr. 829 (Cal.App. 2 Dist. 1984) *later proceeding* 43 Cal.3d 858, 239 Cal.Rptr. 626, 741 P.2d 124 (1984).

3. *Continental Insurance Co. v. Herman*, 576 So.2d 313 (Fla. Dist. Ct. App. 1991), *rev. denied*, 598 So.2d 76 (1991).

4. *Peprah v. American Suzuki*, 608 A.2d 1 (N.J. Super. L. 1992).

5. *Henry v. Deen*, 410 N.C. 75, 310 S.E.2d 326 (1984).

separate tort of spoliation of evidence, while Arkansas,[6] Arizona,[7] Kansas,[8] Louisiana,[9] Maryland[10] and New York[11] have declined to do so. In those states where the tort is recognized the elements of a cause of action for negligent spoliation of evidence are as follows:

"(1) The existence of a potential civil action;

"(2) A legal or contractual duty to preserve evidence relevant to the potential civil action;

"(3) The destruction of that evidence;

"(4) A significant impairment of the ability of the injured party to prove the lawsuit;

"(5) A causal relationship between the destruction of the evidence and the inability to prove the lawsuit; and

"(6) Damages." *Continental Insurance Co. v. Herman, supra* at 315.

Those states who have recognized this new tort have generally cited the need to provide a remedy for every wrong and the salutary goal of preserving evidence that may enhance the likelihood of a just conclusion to litigation. Those who have declined to recognize a separate cause of action for spoliation of evidence have done so because of the availability of alternative remedies such as discovery sanctions and adverse in-

---

6. *Wilson v. Beloit Corp.,* 921 F.2d 765 (8th Cir. Ark. 1990).

7. *La Raia v. Superior Court of County of Maricopa,* 150 Ariz. 118, 722 P.2d 286 (1986).

8. *Kopkin v. Rosel Well Perforators Inc.,* 241 Kan. 204, 734 P.2d 1177 (1987).

9. *Edwards v. Louisville Ladder Co.,* 796 F. Supp. 966 (W.D. La. 1992).

10. *Miller v. Montgomery County,* 64 Md. App. 202, 494 A.2d 761, *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985).

11. *Pharr v. Cortese,* 147 Misc.2d 1078, 559 N.Y.S.2d 780 (1990).

ferences, the speculative nature of the extent and existence of damages, and the inappropriateness of applying such liability to a third party who is not a party to the underlying action in which the evidence would have been used.

In *Liebig* the plaintiff's 19-year-old decedent died after being struck by a locomotive allegedly operated by the defendant at a speed too fast for existing conditions. The particular locomotive was equipped with a device used to record its speed, and when the plaintiff requested production of the tape showing the speed at the time of the accident, the defendant asserted that the tape had been inadvertently reused, thereby erasing evidence of the relevant speed.

In *Taylor* the plaintiff was allegedly injured as a result of using a home permanent wave application. She returned the unused portion of the product to the store where it was bought, which in turn forwarded the product to the manufacturer in whose possession it was eventually lost.

We respectfully disagree with the opinions of our colleagues and suggest that the perceived wrong in each case could be adequately remedied through judicial sanctions without the need to create a new cause of action. In each case if it were determined that the defendant's actions had made it impossible for the plaintiffs to prove the facts necessary to support their cause of action, as a sanction those facts could be presumed to have been established for purposes of pretrial motions and the jury directed to infer their existence at the time of trial. Then in the context of the issues present and related to the underlying action, the jury could determine whether the plaintiffs have met their burden of proof with the benefit of the judicially directed inferences and what, if any, damages the plaintiffs incurred

as a result of the defendants' actions, assuming those facts to have been established. Instead it is suggested that the plaintiff proceed to trial with the available evidence and, if unsuccessful, then have the jury consider the spoliation of evidence claim and attempt to determine whether the destruction of evidence caused a significant impairment in the ability of the plaintiff to win the lawsuit, after which the jury must then calculate some form of damages. In the absence of any remedial adverse inference because of the lost evidence, the jury would have to speculate what the lost evidence would have shown and to what degree it would have contributed to the plaintiff's success in the underlying suit. The use of remedial inferences has the dual benefit of obviating the need for speculation and maximizing judicial economy by avoiding consideration of a parallel cause of action.

At the heart of any spoliation of evidence claim, is the need to establish a legal or contractual duty to preserve evidence in a civil action. In the absence of a contract or agreement between the parties to preserve evidence, or a special relationship recognized by law which would require one of the parties to do so, there can be no claim for spoliation of evidence without creating a common-law duty on the part of the defendant to preserve that evidence. California, one of the states that recognizes the tort of spoliation of evidence, is notable in its willingness to do so. The California Supreme Court in *Clemente v. State,* 40 Cal. 3d 202, 707 P.2d 818, 219 Cal. Rptr. 445 (1985), recognized a cause of action against the state because the highway patrol officer who investigated the accident permitted the motorcyclist to leave the scene without obtaining his identity. The officer had been approached by the motorcyclist who admitted striking the pedestrian and was directed

by the officer not to leave the scene and to wait for the arrival of the local police department. The motorcyclist failed to obey those instructions, and his identity was never discovered.

In a strikingly similar fact pattern the Pennsylvania Superior Court declined to recognize a cause of action by a pedestrian against the City of Philadelphia where the pedestrian and her companion were struck by an automobile while crossing a street. While the police were lifting her into a van for transport to the hospital, a man approached the police and identified himself as the driver of the car. He was told to stand by until plaintiff was on her way to the hospital. Her companion, who also had been hit, tried to approach the man to get his identification but was stopped by the officers and told that they would take care of it. He too was loaded into the van, and by the time the van left for the hospital, the driver had vanished and was never identified. *Caldwell v. City of Philadelphia,* 358 Pa. Super. 406, 517 A.2d 1296 (1986), *alloc. denied,* 517 Pa. 597, 535 A.2d 1056 (1987).

Similarly in *Stupka v. Peoples Cab Company,* 437 Pa. 509, 264 A.2d 373 (1970), our Supreme Court declined to recognize a cause of action against a cab company for failure of its driver to get sufficient information from the driver of another vehicle involved in a traffic accident to permit the cab passengers to identify potential defendants. The court notes that at common law the courts have been reluctant to impose affirmative duties on individuals even in situations where most people would recognize a moral duty to act, and that in those instances where it has been imposed, it is usually because of a special relationship between the parties. While recognizing that a common carrier has such a relationship with its passengers, the

court made a distinction between the duty to protect the passengers' physical well-being and their financial well-being.

In the instant case we are faced with a claim of spoliation of evidence against a third party, which is not the party against whom the evidence would have been used at the time of trial. Such an extension of the spoliation of evidence theory is recognized by the courts of California where a third party can be held liable to an injured plaintiff if that third party could reasonably have foreseen that his actions would cause the destruction of evidence valuable to that plaintiff. *Velasco v. Commercial Building Maintenance Company,* 169 Cal.App. 3d 874, 215 Cal.Rptr. 504 (1985).

In the instant case the plaintiff asks the court to recognize a spoliation of evidence claim against her hospital/employer because its employees discarded the subject blood gas kit along with the rest of the biohazardous material stored in a disposal container before the plaintiff could recover the kit in order to examine it for any defects. To recognize such a cause of action would place a third party, such as the hospital in this case in the position of an insurer. If the plaintiff has insufficient evidence to pursue the manufacturer on a products liability claim because the kit was discarded, the plaintiff could recover damages against the hospital for destroying that evidence. On the other hand, if the plaintiff were successful in obtaining a verdict against the manufacturer of the blood gas kit without that evidence, the manufacturer could then maintain a spoliation of evidence claim against the hospital for depriving it of the opportunity to prove that the kit was not defective. We find no basis in common law for imposing a duty to preserve evidence on a third party in the absence of an expressed agreement or statutory ob-

ligation to do so, and we believe that the recognition of a separate cause of actions for spoliation of the evidence runs contrary to the policy of favoring final judgments in litigation.

The plaintiff has also alleged in Count VI a claim against the hospital for invasion of her privacy by spreading the word that she had been splattered with blood from an AIDS patient and by allowing hospital employees to randomly access her private medical files and learn private information about her, including information regarding a stay in a psychiatric ward. In order to make out a claim for invasion of privacy, the plaintiff must establish that a private fact, of a type highly offensive to a reasonable person and not of legitimate concern to the public, was published about her. *Santillo v. Reedel,* 430 Pa. Super. 290, 634 A.2d 264 (1993). If hospital employees were permitted to access her file for non-medical reasons or publicly discussed her private information, her privacy may have been violated.

Finally, the plaintiffs in Count VII seek damages for intentional infliction of emotional distress. It is not clear that a claim for intentional infliction of emotional distress is even recognized by the Pennsylvania courts. See *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987). Even if such a cause does exist, it could only be recognized in cases where the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and be regarded as utterly intolerable in a civilized community. *Rinehimer v. Luzerne County Community College,* 372 Pa. Super. 480, 494, 539 A.2d 1298, 1305 (1988), citing *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa. Super. 377, 368 A.2d 770 (1976). Plaintiff's allegations against the hospital do not meet this standard.

Accordingly, we enter the following:

## ORDER

And now, March 19, 1996, at 9:30 a.m., it is hereby ordered:

(1) The preliminary objections of defendants Narmi and Slimmer in the nature of a demurrer to Count II of the complaint are sustained, except for the plaintiffs' claim of professional negligence for failure to make an appropriate referral.

(2) The preliminary objections of the defendant The Pottsville Hospital and Warne Clinic to Counts II, III, IV, V and VII of the complaint are sustained, except for the plaintiffs' claim of professional negligence, through the hospital's employees, for failure to make an appropriate referral.

(3) The preliminary objection in the nature of a demurrer of the defendant The Pottsville Hospital and Warne Clinic to Count VI of the complaint and to Count VIII of the complaint (to the extent it relates to VI) is denied.