288 N.J. Super. 331 (1995)
672 A.2d 266
ILVIA MIGLICIO, PLAINTIFFS,
v.
HCM CLAIM MANAGEMENT CORPORATION, NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITERS ASSOCIATION, (JUA), DEFENDANTS.
Superior Court of New Jersey, Law Division.
September 12, 1995.
*335 Mark Pfeffer, for plaintiffs (Goldenberg, Mackler & Sayegh, attorneys).
Raymond V. King, for defendants, Hertz Claim Management Corporation (King, Kitrick, Jackson & Troncone, attorneys).
WINKELSTEIN, J.S.C.
This matter comes before the court on a motion by defendant Hertz Claim Management Corporation (HCM) for summary judgment. The primary issue to be addressed, not heretofore decided in this jurisdiction, is whether HCM as the servicing carrier for the New Jersey Full Insurance Underwriting Association (the Association), is immunized pursuant to N.J.S.A. 17:30E-7b, & e, from claims of bad faith by its insured.
Plaintiff was injured when her vehicle was rear ended on June 16, 1990. She sustained disc injuries which required anterior *336 fusion and a discectomy at C5-6 and C-6-7 on April 24, 1991. The negligent driver's insurance company offered its policy limits of $15,000 in settlement of the claim. On June 6, 1991, plaintiff requested permission from HCM, the servicing carrier for the Association as plaintiff's underinsured motorist (UIM) carrier, to settle the claim with the negligent driver for the $15,000 policy limits. See Longworth v. Van Houten, 223 N.J. Super. 174, 538 A.2d 414 (App.Div. 1988); Rutgers Cas. Ins. Co. v. Vassas, 139 N.J. 163, 652 A.2d 162 (1995). Plaintiff's UIM policy limits were $50,000. Defendant failed to respond to plaintiff's request.
On January 3, 1992, plaintiff filed a complaint against defendant demanding, inter alia, that she be permitted to accept payment of the $15,000 policy. After defendant was served, it consented to settle the third party claim for $15,000 but only under the condition that it receive a dismissal as to all counts in the complaint, which included claims for counsel fees, costs and punitive damages based on HCM's alleged acts of bad faith. On September 21, 1992 plaintiff wrote defendant naming an arbitrator and requested that defendant choose an arbitrator so the matter could be resolved through arbitration. Defendant failed to respond to plaintiff's request.
Thereafter, plaintiff's complaint was dismissed by the court for lack of prosecution. On motion to reinstate, the motion judge, by order of December 4, 1992, reinstated the complaint and required defendant to file an answer. No answer was filed and default was entered. Subsequent thereto, at the request of counsel for HCM, plaintiff's counsel agreed to vacate the default. Medical records of plaintiff's injuries were then supplied to defendant's counsel. An effort to obtain the difference between the $15,000 received on behalf of the third-party tortfeasor and the $50,000 UIM policy limits was made but no agreement was reached.
After various delays in scheduling, arbitration was eventually held on May 23, 1994. The arbitrators valued plaintiff's injuries at $135,000. Defendant declined to tender the balance of $35,000 ($50,000 less the tortfeasor's $15,000 policy limits). Plaintiff *337 moved to confirm the award. The motion judge initially denied the motion and plaintiff requested reconsideration. While the latter motion was pending, defendant agreed to pay the $35,000 claim. Payment, however, was only offered in settlement of all claims, including the allegations of bad faith and claims for fees and costs.
On April 5, 1995, judgment was entered reflecting an award of $35,000 as to plaintiff's UIM claim pursuant to the first count of the complaint. On May 5, 1995, plaintiff forwarded a docketed judgment for UIM benefits and a warrant to satisfy to counsel for defendants so the claim could be placed in line for payment. N.J.A.C. 11:3-2A.2. Defendant's motion for summary judgment seeks dismissal of all of the remaining claims in the complaint.
The complaint has been amended three times. The third amended complaint is before the court. The first count seeks payments of $35,000, plus interest, costs and fees. In the second count plaintiff claims third-party beneficiary status as to the contract between HCM and the Association and seeks compensatory and punitive damages. In the third count plaintiff requests compensatory damages as to HCM's alleged negligence in providing services to plaintiff. In the fourth count plaintiff demands compensatory and punitive damages based on defendant's alleged bad faith.
R. 4:46-2 provides that summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." All inferences of doubt are drawn against the movant in favor of the opponent of the motion. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75, 110 A.2d 24 (1954). The papers supporting the motion are closely scrutinized and the opposing papers indulgently treated. Id. at 75, 110 A.2d 24.
*338 As to the first count, the $35,000 has been put in line for payment. As to that portion of the count the issue is moot. Plaintiff's remaining demand for interest, counsel fees and costs will be addressed later in this opinion.
In the second count HCM seeks summary judgment on the grounds that plaintiff is not a third-party beneficiary of the serving contract between the Association and HCM. "A person for whose benefit a contract is made [is a third-party beneficiary and] ... may sue thereon in any court...." N.J.S.A. 2A:15-2; Atlantic City v. American Cas. Ins. Co., 254 F. Supp. 396 (D.N.J. 1966). For plaintiff to have third-party beneficiary status it must be concluded that the reasonable expectations of the parties to the agreement between HCM and the Association were that plaintiff, as the insured, would derive a benefit from the agreement. Eschle v. Eastern Freight Ways Inc., 128 N.J. Super. 299, 302, 319 A.2d 786 (Law Div. 1974).
Motorists are insured both for their own benefit and for the benefit of providing victims of automobile accidents with financially responsible persons to look to for damages. Selected Risks Insurance Co. v. Zullo, 48 N.J. 362, 371, 225 A.2d 570 (1966). One of the purposes of the legislation creating the Association was to assure the New Jersey insurance consumer full access to automobile insurance through normal market outlets. N.J.S.A. 17:30E-2. It was designed to provide private passenger automobile insurance coverage at voluntary market rates for drivers who were unable to secure coverage at a voluntary market. Senate Labor, Industry & Professions Committee Statement, Senate, No. 2790-L. 1986, c. 211. The servicing carriers contract with the Association to service the individual accounts and must meet certain criteria. They are required to have at least $10,000,000 in assets; to have been in the insurance related business for at least five years; and to have the capacity to issue and service at least 100,000 private passenger automobile insurance policies. Id. A reasonable conclusion is that the servicing contract between the carrier and the Association is to benefit both those who will be *339 afforded coverage as well as those who are injured by the actions of the insured. Thus plaintiff, having purchased insurance coverage, is therefore a third-party beneficiary of the servicing contract between HCM and the Association and has the requisite interest to enforce the contract. Should HCM be found to have breached the contract damaging plaintiff, plaintiff would be entitled to seek damages as a third-party beneficiary under the second count of the complaint.
The primary focus of the second, as well as the fourth count, is that HCM acted in bad faith. Plaintiff argues that HCM's bad faith is demonstrated by: its failure to choose an arbitrator causing plaintiff to file suit to compel arbitration; its failure to answer the complaint; its failure to make an offer of settlement until the bad faith action was asserted; its failure to comply with a demand for production of documents and notice to take depositions; and its failure to settle the claim after the arbitrators valued the claim at $135,000, substantially above the $50,000 policy limits. Plaintiff alleges bureaucratic indifference by HCM caused years of delay before plaintiff could have her claim "put in line" for payment under the Association deferral program. N.J.A.C. 11:3-2A.1.
"The duty of good faith and fair dealing pervades insurance contracts." Sears Mortgage Corp. v. Rose, 134 N.J. 326, 347, 634 A.2d 74 (1993). Both the agent of the insurer and the insurer owe fiduciary duties to the insured, which includes the duty of good faith and fair dealing in the performance and enforcement the insurance contract. Pickett v. Lloyd's, 131 N.J. 457, 621 A.2d 445 (1993). As to unfair claims settlement practices, an insurer includes any legal entity authorized to represent an insurer with respect to a claim. N.J.A.C. 11:2-17.3. An insurer's breach of its fiduciary obligation imposed by virtue of its policy, by its wrongful failure to settle, sounds in both tort and contract. Id. at 470, 621 A.2d 445. It is the remedy, not the technical nature of the pleading, that is emphasized. Id. at 471, 621 A.2d 445; Dunn v. Praiss, 139 N.J. 564, 577, 656 A.2d 413 (1995). Compensation *340 should not "be dependent upon what label we place upon an action, but rather on the nature of the injury inflicted upon the plaintiff and the remedies requested by him." Rova Farms Resort v. Investors Ins. Co. 65 N.J. 474, 504, 323 A.2d 495 (1974). The required standard is one of fairness and good-faith dealing. Id. at 509, 323 A.2d 495.
An example of how the good faith issue has been addressed can be found in Polito v. Continental Casualty Co., 689 F.2d 457 (3d Cir.1982). Polito involved a first-party claim filed by the insured against its fire insurer. The court ruled that there could be a recovery above the policy limits on a tort theory if the insurance company acted in bad faith. In Polito, the plaintiff submitted a proof of loss and demand for an appraisal in October 1979, and additional proofs of loss in December 1979. It was not until January 17, 1980, that the insurer acknowledged the claim. On those facts, the court found that a jury could have found that by delaying the appraisal process and subsequent payment the insurance company breached the insurance contract. Id. at 461.
It was concluded that a wrongful failure to settle the claim sounded in both tort and contract, and it made no difference how the cause of action was labeled. Id. The Polito court found that the doctrine of the implied covenant of fair dealing was fully applicable to such insurance contracts, and that an insurance company, as a fiduciary of the party with whom they had a contractual relationship, had a duty, which if breached, could result in a claim for consequential damages.
N.J.S.A. 17:29B-4(9), addresses unfair claim settlement practices as to all insurers. Unfair practices include:
b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
........
e. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed.
f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

*341 g. Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
........
m. Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;
........
n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.
The purpose of the statute is to prohibit insurers from engaging in unfair claim settlement practices. N.J.A.C. 11:2-17.1. The regulations were enacted to promote the fair and equitable treatment of claimants by defining certain minimum standards for the settlement of claims, including a thirty day period to pay first-party claims other than personal injury protection (PIP) and automobile physical damage claims, and ninety days from the date of receipt by the insurer of notification to pay third-party bodily injury claims. N.J.A.C. 11:2-17(c). An insurer shall not compel claimants to institute litigation to recover amounts due under an insurance policy by offering substantially less than amounts recovered in actions brought by the claimants, and no insurer shall deny payment of a claim when it is reasonably clear that either full or partial benefits are payable. N.J.A.C. 11:2-17.8(h) & (i).
The statute and regulations set forth a standard of conduct for insurers as to the settlement of claims with, or on behalf of, their insured. Dependent upon the underlying reasons for non-compliance, any deviation from the standards may be considered as evidence of bad faith.
To prove bad faith, "a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard or the lack of a reasonable basis for denying the claim." Ibid. (citations omitted) Pickett, 131 N.J. at 473, 621 A.2d 445 (citation omitted). The *342 knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless indifference to facts or to proofs submitted by the insured. Ibid. Neither negligence nor mistake is sufficient to show bad faith; rather, it must be demonstrated that the insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable, or that it recklessly disregards the fact that the conduct is unreasonable. Id. at 474, 621 A.2d 445. If a claim is fairly debatable, no liability arises. Id. at 473, 621 A.2d 445.
The Court in Pickett, supra, cited Chester v. State Farm Ins. Co., 117 Idaho 538, 789 P.2d 534 (Ct.App. 1990), as an example of what facts could constitute bad faith. In Chester there was an eight month delay in the insurer's offer to settle for an undisputed sum. The insurer failed to supervise the adjuster's handling of the case, which lead to delay in processing the forms. Months passed leaving the insured's file inactive. It was concluded that these facts could form a basis to find bad faith. Id., 117 Idaho at 541, 789 P.2d 534.
In the instant case the delays were longer than those in Chester. The insurer has a thirty day presumptive period to notify the insured of its intentions concerning the settlement offer made by the tortfeasor. Longworth, supra, 223 N.J. Super. at 194-195, 538 A.2d 414. The time frame may be extended by extraordinary circumstances but such extensions should be sparingly exercised. Rutgers Cas. Ins. Co., supra, 139 N.J. at 173-175, 652 A.2d 162. Here, defendant did not timely reply when notified of the $15,000 settlement offer. Plaintiff was required to file a complaint to have an arbitrator appointed. Defendant then failed to timely answer the complaint. Even after the arbitrators valued the claim at $135,000, defendant refused to agree to pay the difference between the $15,000 paid on behalf of the tortfeasor and the $50,000 limits under the UIM policy. It was not until plaintiff's motion to confirm the arbitration award that payment was finally offered, more than two and one-half years after plaintiff filed the complaint to have the arbitrators appointed. *343 The accident was a rear-end collision. Liability was reasonably clear. The injuries to plaintiff included disc damage, which in April 1991, required anterior fusion and discectomy at C5-6 & C6-7. Whether the conduct of defendant resulted in delays in acknowledging the claim and offering payment is fairly debatable and is for a jury to consider under these circumstances.
Defendant argues, however, that even if the issue of bad faith is a jury question, as the servicing carrier for the Association it is immunized for its actions under N.J.S.A. 17:30E-7(b) & (e). In other words, if there is a breach of good faith and fair dealing, is HCM protected by the immunities of the statute, which reads as follows:
Pursuant to the plan of operations, the association shall have the power and duty to:
........
b. Sue or be sued in the name of the association, including taking any legal actions necessary or proper for recovery of any assessments for, on behalf of, or against members. A judgment against the association shall not create any direct liability against the servicing carrier, board of directors or the individual members, or the individual participating members of the association;

........
e. Arrange for the issuance of automobile insurance to any qualified applicant through servicing carriers. Each servicing carrier shall issue policies in the name of the servicing carrier, on behalf of the association, to the extent the plan of operation provides. Servicing carriers, as agents of the association, shall have no individual liability for claims or policies written by the association. However, notwithstanding the above, or any other provision of law to the contrary, the association shall not arrange for the issuance or renewal of any automobile insurance policy, either through a servicing carrier or on its own behalf, on or after October 1, 1990;
[N.J.S.A. 17:30E-7b., e. (emphasis supplied)]
The statute provides that a judgment against the Association does not create any direct liability against the servicing carrier which, as an agent of the Association, has no individual liability for claims or policies written by the Association. Only the Association is subject to judgments arising from claims on Association policies issued by a servicing carrier. Bidnick v. Hanover Ins. Co., Inc., 230 N.J. Super. 111, 114, 552 A.2d 1023 (App.Div. 1989) f.n. 1.

*344 "[t]he servicing carrier is not the provider of the insurance. The Association is the insurer with the policy issued in the name of the servicing carrier. N.J.S.A. 17:30E-7e. The servicing carrier is nothing more than an agent for the Association. It is paid for its services, N.J.S.A. 17:30E-7j, but not liable for claims or policies written by the Association."
[Id. at 115, 552 A.2d 1023.]
In Peprah v. American Suzuki, 257 N.J. Super. 132, 608 A.2d 1 (Law Div. 1992), the court considered the scope of N.J.S.A. 17:30E-7(e). It concluded that immunity from liability for the servicing carrier was not for all claims, but only for those arising from, under, or pursuant to the policy. Id. at 137, 608 A.2d 1. It found that if a servicing carrier acted outside the scope of its duties or obligations the law of agency would dictate that it might be held liable individually. The court found that independent torts such as conversion, spoliation of evidence, assault, battery, "and the like", were clearly outside the intended scope of duties of a servicing carrier for the Association.
The question then presented in the instant case is whether the bad faith actions of the servicing carrier, if proven, may constitute actions outside the scope of its duties and obligations under the contract with the Association. This court concludes that they may. Although the servicing carrier is not liable for any judgment against the Association arising from the underlying claim against the Association policy, the carrier should not be insulated against claims based upon its own independent actions if they are taken in bad faith. A construction of the legislative language which would allow a servicing carrier to be immunized from its own bad faith actions might well encourage servicing carriers to avoid timely payment of claims. A bad faith claim which arises from improper conduct of a servicing carrier in servicing the insured's account is not a claim for payment under the provisions of the policy.
The allegations are that HCM acted outside the scope of its obligation to deal fairly with the insured. If true, such conduct, just as the tort of spoilation of evidence, falls outside the intended scope of duties of a servicing carrier. Peprah, supra, at 138, 608 *345 A.2d 1. To hold to the contrary would encourage servicing carriers to deal unfairly with insureds by delaying payment of claims without any potential liability for their improper actions. This could not have been the intent of the legislature when it enacted N.J.S.A. 17:30E-7(b) & (e).
When a literal application of the language of a statute or regulation would lead to results not compatible with the legislative intent, it is the court's proper function to give effect to the purpose of the legislature, with the spirit of the legislative direction prevailing over the literal sense of the statute. Surace v. Pappachristou, 244 N.J. Super. 70, 75, 581 A.2d 875 (App.Div. 1990). Statutes are to be read sensibly rather than literally. State of New Jersey v. State Troopers Fraternal Assoc. 134 N.J. 393, 418, 634 A.2d 478 (1993). To hold the servicing carrier immune from acts of bad faith would be contrary to the public policy governing unfair claims settlement practices as established in N.J.S.A. 17:29B-4(9) and N.J.A.C. 11:2-17.1.
Excluding from the immunity acts of bad faith is also consistent with public policy as expressed by the legislature in limiting the indemnification of certain corporate agents to actions taken in good faith. See N.J.S.A. 14A:3-5(1)(2) and N.J.S.A. 15A:3-4(b), (indemnification of directors, officers and employees of both for profit and nonprofit corporations); N.J.S.A. 17:9A-250B (indemnification of banks and savings banks directors, managers, officers and employees).
The purposes of N.J.S.A. 17:30E-7 would not be circumvented by such a conclusion. When a servicing carrier acts in good faith, within the scope of its duties and obligations, it bears no liability for any judgments entered against the Association based upon the underlying claim. It is only when the carrier takes wrongful actions, outside of its obligations, that liability could attach. This position promotes the public policies of dealing fairly with the insured and immunizing servicing carriers as to claims for payment pursuant to the insurance policy when acting within the intended scope of their obligations.
*346 Applying these principles to the complaint, the first, second and fourth counts all withstand the summary judgment motion. In light of the factual account set forth above, genuine issues of material fact exist on the issue of bad faith. As to the first count, although plaintiff is now "in line" to receive the $35,000 policy limits under her UIM coverage, whether plaintiff is entitled to additional damages should await resolution of the bad faith issue. The second count seeks damages based on plaintiff's rights as a third party beneficiary under the HCM-Association contract. If a jury finds the aforementioned delays were in bad faith, plaintiff has the status to seek damages as a third-party beneficiary under the servicing contract. Both tort and contract are appropriate causes of action. Pickett at 470, 621 A.2d 445. The fourth count sounds in bad faith and must abide the jury's decision.
The third count, however, must be dismissed. This count seeks damages based on HCM's negligence in servicing the account. Neither negligence nor mistake is enough to support a cause of action against HCM. Pickett at 474, 621 A.2d 445. Summary judgment as to the third count is therefore granted.
Defendant's final argument is that since the claim for the $35,000 has been placed in line for payment, summary judgment is warranted as plaintiff has suffered no damages. This argument is misplaced. A party who breaches a contract is liable for all of the material and probable consequences of that breach of contract. Picket at 474, 621 A.2d 445. This may not only include interest, Busik v. Levine, 63 N.J. 351, 358, 307 A.2d 571 (1973), Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 622, 503 A.2d 862 (1986), but other costs and compensatory damages which were foreseeable. Coyle v. Englander's, 199 N.J. Super. 212, 220, 488 A.2d 1083 (App.Div. 1985). See also Polito, supra, at 461, where Judge Gibbons noted that if liability was limited to the amount of loss plus interest, insurance companies would be encouraged to take advantage of the insured by delaying payments.
Punitive damages may also be available. To sustain a claim for punitive damages the plaintiff must show something *347 other than a breach of the good faith obligation. Pickett, at 476, 621 A.2d 445 citing Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49-50, 477 A.2d 1224 (1984). The action must be wantonly reckless or malicious. The wrongfulness of the defendant's intentional act is critical. Id. Circumstances must be egregious to warrant punitive damages.
In this case, drawing all inferences against the nonmoving party, a jury could find the defendant acted intentionally and in bad faith in delaying payment of plaintiff's claim. This is a jury issue. Summary judgment based on plaintiff's failure to establish damages is denied.