**POLIZZI MEATS, INC., Salvatore Polizzi, Mary Ann Polizzi and Toni Polizzi, Plaintiffs,**

v.

**AETNA LIFE & CASUALTY COMPANY, Defendant.**

**NEW JERSEY NATIONAL BANK, Plaintiff–Intervenor,**

v.

**AETNA LIFE & CASUALTY COMPANY, Polizzi Meats, Inc., Salvatore Polizzi, Mary Ann Polizzi and Toni Polizzi, Defendants.**

**Civil Action No. 93–4271.**

United States District Court, D. New Jersey.

June 19, 1996.

Opinion Denying Reargument Aug. 2, 1996.

Michael F. Chazkel, Chazkel & Associates, P.C., East Brunswick, N.J., for Plaintiff, Polizzi Meats, Inc.

Michael A. Scannapieco, Audubon, N.J., for Defendant, Aetna Life and Casualty Company.

Brian J. Mulligan, Sterns & Weinroth, P.C., Trenton, N.J., for Plaintiff–Intervenor, New Jersey National Bank.

ORLOFSKY, District Judge:

Plaintiff, Polizzi Meats, Inc. ("PMI"), filed this action against Aetna Life and Casualty Company ("Aetna"), seeking a declaratory judgment that PMI was covered for losses arising out of a fire at its place of business, under a policy of insurance issued by Aetna.[1] Jurisdiction is based upon diversity of citizenship and an amount in controversy in excess of $50,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

The parties have filed the following motions: (1) Aetna has moved for partial summary judgment on PMI's claims for bad faith damages and/or punitive damages; (2) alternatively, Aetna has moved for separate trials on the coverage issue and PMI's bad faith/punitive damages claims; (3) PMI has filed a cross-motion for partial summary judgment on the coverage issue; (4) plaintiff-intervenor, New Jersey National Bank ("NJNB"), which holds a mortgage on the property insured by Aetna, has moved for partial summary judgment against Aetna on the issue of Aetna's loss payment obligations under the Aetna–PMI policy; and (5) NJNB has also moved for a separate trial pursuant to Fed.R.Civ.P. 42(b).[2]

■ This case requires this court to determine the circumstances under which an insurance carrier doing business in New Jersey may be exposed to punitive and "bad faith" damages for its refusal to pay a "first-party" fire damage claim, when the fire appears to be of suspicious origin.

1. By order of Judge Mary Little Parell, filed on June 21, 1994, the individual plaintiffs were all dismissed from the case.

2. After its motions were filed, and prior to the return date, NJNB settled its claim against Aetna. In view of the settlement between NJNB and Aetna, NJNB's motions for partial summary judgment, and for a separate trial pursuant to Fed.R.Civ.P. 42(b), will be dismissed as moot.

In *Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445 (1993), the New Jersey Supreme Court held, for the first time, that an insurer's "bad faith" refusal to pay "first-party" benefits to its insured could be the basis of an action for damages, including consequential damages, in excess of the policy limits. Although *Pickett* involved a claim for collision damage benefits for the total destruction of the insured's tractor-trailer, I conclude that the rationale and logic of *Pickett* apply with equal force in the context of a fire damage claim.

## I. Facts and Procedural History

Plaintiff, Polizzi Meats, Inc., is a wholesale meat purveyor. PMI was owned and operated by Salvatore Polizzi ("Polizzi"), his wife, Mary Ann Polizzi, and his daughter, Toni Polizzi. Mary Ann Polizzi owned 55% of the common stock of PMI, and Polizzi owned the remaining 45%. Memorandum of Law in Support of Plaintiff, Polizzi Meats, Inc.'s, Motion for Partial Summary Judgment and in Opposition to Defendant, Aetna Life and Casualty Company's, Motion for Partial Summary Judgment ("PMI's Rule 56 Brief") at 3. Until Thursday, January 21, 1993, PMI conducted its business, including a small retail operation, at 200 Hamilton Avenue, Trenton, New Jersey. *Id.* Plaintiff–Intervenor, NJNB, held a first mortgage on the Hamilton Avenue property.

### A. The Fire

On January 21, 1993, a fire substantially destroyed the edifice, much of PMI's equipment and all of the inventory at the Hamilton Avenue address. *Id.* Valerie Williams, who lived at 214 Hamilton Avenue, testified that, at about 9:20 p.m., on January 21, she saw Salvatore Polizzi leaving the Polizzi Meats building and that this was unusually late for him to be working. Brief in Support of Defendant, Aetna Life and Casualty Company's, Motion for Partial Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure, exhibit GG (Dep. of Valerie Williams), at 18, 27. At about 10:55 that night, Ms. Williams' son told her there was a fire at the meat market and to call 911. *Id.* at 29. While still on the phone with the 911

operator, Ms. Williams heard fire trucks approaching. PMI's Rule 56 Brief, exhibit C (Dep. of Valerie Williams) at 30. When firefighters first arrived on the scene, PMI's building was securely locked. PMI's Rule 56 Brief at 6; *see also* Aetna's Rule 56 Brief, exhibit CC (Dep. of Firefighter Gennello) at 14.

### B. The Investigation

PMI promptly reported the fire to its insurer, Aetna. Aetna assigned Jeffrey F. Ciaramella ("Ciaramella") to adjust the claim on its behalf. Aetna also asked Peter Rincones ("Rincones"), of Aetna's Special Investigation Unit, to investigate the fire. Memorandum of Law in Support of Plaintiff Intervenor's Motion for Partial Summary Judgment ("NJNB's Rule 56 Brief") at 3. At the same time, Detectives Thomas Keegan ("Keegan") and Edgar Rios ("Rios") undertook an investigation of the fire on behalf of the Economic Crimes Unit of the Trenton Police Department. As part of the investigation, Rios collected ten samples from various locations at the fire scene and sent them to the New Jersey State Police Forensic Science Bureau to be tested for the presence of accelerants. PMI's Rule 56 Brief at 5–6. The laboratory detected "[n]o volatiles characteristic of a known accelerant." PMI's Rule 56 Brief, exhibit I.

In the course of adjusting the claim, Ciaramella maintained "running notes" on the progress of the investigation. NJNB's Rule 56 Brief, exhibit E. Ciaramella's entry for January 26, 1993 states that Ciaramella spoke to Rincones, and that Rincones "indicates it's a very suspicious fire." *Id.* On the same day, January 26, 1993, Aetna issued a reservation of rights letter signed by Joseph Wolliard ("Wolliard") of the Property Claim Department. NJNB's Rule 56 Brief, exhibit F. This letter was addressed to Chuck Lumio, of Anthony J. Rocca & Associates ("Rocca"), PMI's public adjuster, and was copied to PMI and Aetna's file.

On March 1, 1993, Ciaramella made the following entries in his "running notes:" (1) that Rincones had taken a sworn statement from Salvatore Polizzi and that Polizzi "appears to be clean;" (2) that the Trenton

Police Department was not pursuing the insured as a suspect in the arson investigation; and, (3) that Rincones recommended immediately beginning to "adjust the claim & perhaps issue an advance." NJNB's Rule 56 Brief, exhibit E. On March 2, 1993, Detective Keegan reported to Rincones that he had learned that PMI had not made payroll withholding payments to the IRS for about ten months prior to the fire. Aetna's Rule 56 Brief, exhibit HH, index 1, at 17–18. Keegan also confirmed that, although the building was equipped with a central station monitor alarm system, the central station had received no alarm on the night of the fire. *Id.* at 18. On March 3, 1993, Aetna issued a check in the amount of $100,000.00 payable to PMI, Rocca and NJNB. NJNB's Rule 56 Brief, exhibit E.

On March 8, 1993, Rincones issued a Structural Fire Investigation Report, in which he stated that the fire had at least two distinct points of origin. Aetna's Rule 56 Brief, exhibit HH, index 1, at 5–6. One origin was around some boxes of business records kept in the front, west half of the basement of the building. *Id.* The other point of origin was determined to be a storage room on the first floor. *Id.* Rincones noted that the burn patterns appeared to be those of "normal" combustibles and that there was no evidence of "flammable liquid burn patterns." *Id.*

On March 11, 1993, Ciaramella noted that Rincones was "still developing his investigation" and that the facts might "still warrant an [examination under oath]." *Id.* On March 15, 1993, Ciaramella wrote to Rocca asking if Rocca had received the $100,000.00 check, reserving certain rights, and requesting various proofs of loss. *Id.*

A proof of loss for the building claim was timely filed, but the deadline had to be extended for the equipment damage claim, due to difficulty in securing a temporary electrical permit to allow testing the machinery at the Hamilton Avenue property. *Id.*

On April 28, 1993, Aetna's attorney, Michael Scannapieco, took the depositions of Mary Ann Polizzi, PMI's majority stockholder and Polizzi's wife, and Toni Polizzi, Polizzi's daughter, the office administrator and a sales representative for PMI. Aetna's Rule 56 Brief, exhibit HH, at 2.

The policy at issue, provides, in pertinent part, that:

2. We will not pay for any loss or damage caused by or resulting from any of the following:

. . . .

h. Dishonest or criminal acts by you, or any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose.

1. Acting alone or in concert with others; or

2. Whether or not occurring during the hours of employment.

Aetna's Rule 56 Brief, exhibit A, Property Package Causes of Loss–Special Form at 3 of 7. The policy further provides that it is void "in any case of fraud by you as it relates to the coverage form at any time. . . . [and] is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning . . . [a] claim under this Coverage Part." *Id.* exhibit A, Commercial Property Conditions at 1 of 2.

In June, 1993, one of Aetna's Senior Investigators, Joseph Schanken ("Schanken") undertook the "opportunity" prong of the investigation. NJNB's Rule 56 Brief, exhibit E. On August 31, 1993, Schanken reported to Ciaramella that "[Head Office] legal has approved a coverage declination." *Id.*

On August 31, 1993, Aetna denied PMI's claim for coverage, citing the following reasons: (1) the investigation revealed that the fire was incendiary in nature and one or both of the insureds were "fraudulently connected" with the fire; and (2) that one or both of the insureds "intentionally concealed and misrepresented material facts relating to this insurance claim." *Id.* exhibit B.

On September 22, 1993, this action was filed, naming PMI, as well as its principals, Salvatore Polizzi, his wife, Mary Ann Polizzi, and his daughter, Toni Polizzi, as plaintiffs. The complaint contains three counts. The First Count alleges a breach of the insurance contract and seeks damages, interest, attor-

neys' fees and costs. The Second Count alleges the defendants acted in bad faith and seeks punitive, compensatory and consequential damages, as well as interest and costs. The Third Count alleges violations of the New Jersey Consumer Fraud Act and demands, *inter alia,* treble damages.[3]

On October 27, 1993, Aetna filed a motion to dismiss the complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6). On June 21, 1994, Judge Mary Little Parell entered an order dismissing the Third Count of the complaint in its entirety, and dismissing the individual plaintiffs, Salvatore Polizzi, Mary Ann Polizzi and Toni Polizzi, leaving PMI as the sole plaintiff. Aetna filed its answer on July 12, 1994.

NJNB filed its complaint in intervention on April 25, 1994, seeking to establish Aetna's obligation to indemnify NJNB as first mortgagee of the fire-damaged property. On April 25, 1996, the five motions which are presently before this court were filed simultaneously, pursuant to Rule 12 N of the General Rules of the United States District Court for the District of New Jersey.

## II. Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Hersh v. Allen Products. Co.,* 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). The district court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Orson, Inc. v. Miramax Film Corp.,* 79 F.3d. 1358, 1366 (3d Cir.1996). In deciding whether there is a disputed issue of material fact the Court must draw all inferences from the underlying facts in favor of the non-moving party. *See Hancock Indus. v. Schaeffer,* 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); *Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

In order to defeat a motion for summary judgment, "a factual issue must be both ma-

terial and genuine." *Kowalski v. L & F Prods.,* 82 F.3d 1283, 1288–89 (3d Cir.1996). A material factual issue is "one that might 'affect the outcome of the suit under governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). If "a reasonable jury could return a verdict for the non-moving party," then the factual dispute is genuine. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

Additionally, the Federal Rules of Civil Procedure provide:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Under this rule, defendant must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which the plaintiff has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nonetheless, defendant, as the moving party on the motion, bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).

## III. Analysis

### A. *Aetna's Motion for Partial Summary Judgment*

Aetna has filed a motion for partial summary judgment on PMI's claims for conse-

---

3. codified at N.J.S.A. §§ 56:8–1 through 8–2.13.

quential damages and punitive damages. Aetna argues that PMI is not entitled to consequential damages because Aetna possessed a good faith basis for denying PMI's claim. Moreover, Aetna contends that, even if it had acted in bad faith in denying PMI's claim, Aetna did not act with malice, and therefore, PMI may not recover an award of punitive damages as a matter of law.

### 1. Bad Faith—Consequential Damages

■ As noted, the New Jersey Supreme Court has recently recognized a cause of action for consequential damages based on an insurer's bad faith failure to pay a first-party claim. *Pickett*, 131 N.J. at 461, 621 A.2d 445. In order to recover damages in excess of the policy limits the plaintiff must show: (1) that the insurer was without even a "debatably valid" reason for its failure to pay; and, (2) that the insured's consequential damages were "clearly within the contemplation of the insurance company." *Id.* In *Pickett*, Lloyd's had insured the plaintiff's tractor-trailer truck for $30,000.00, against physical damage. The plaintiff's truck was totally destroyed in a collision on January 13, 1987. On the following day, Pickett informed the agent who sold him the policy of the loss. Through a series of colossal blunders, Pickett received no payments under his policy until approximately nine months after the accident, by which time he had lost important seniority with the trucking company for whom he worked. The New Jersey Supreme Court held that an insurer's bad faith refusal to settle a claim "sounds in both tort and contract." *Id.* at 470, 621 A.2d 445 (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 504, 323 A.2d 495 (1974)).

In order to impose "bad faith" liability, the insured must demonstrate that "no debatable reasons existed for denial of the benefits" available under the policy. *Id.* at 481, 621 A.2d 445. In adopting the "fairly debatable" standard, the New Jersey Supreme Court rejected a standard that would equate "bad faith" with negligence, *id.* at 472, 621 A.2d 445 (citing California law), and a subjective standard that would make "bad faith" depend on a motive of self-interest or ill-will, *id.* (citing Pennsylvania law). The "fairly debat-

able" standard derives from decisions of the Rhode Island and Wisconsin Supreme Courts. *See Bibeault v. Hanover Ins. Co.*, 417 A.2d 313 (R.I.1980); *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376–77 (1978).

■ PMI contends that the question whether an insurer's denial of a claim constitutes "bad faith" can never be disposed of on summary judgment. PMI is mistaken. Both parties quote the following language from *Pickett:*

> Perhaps the rule is easiest to understand in the context of the denial of benefits on the basis of noncoverage, such as for experimental surgery under a medical-insurance policy. Under the "fairly debatable" standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim.

*Id.* at 473, 621 A.2d 445. Aetna argues that this language establishes a simple test; if there are genuine issues of material fact regarding coverage which would preclude summary judgment in favor of the insured, then the insurer cannot be held liable in bad faith for consequential damages. By contrast, plaintiff argues that the reasonableness of the denial of benefits, like the reasonableness of any act, should usually go to the jury and that the quoted language from *Pickett* should be limited to situations in which there is no dispute as to the facts and summary judgment turns only on a legal issue, *e.g.*, a question of contract interpretation.

Aetna has the better of this argument. Both *Pickett* and *Bibeault* rely on the Wisconsin Supreme Court's decision in *Anderson*, in which that court wrote that "when a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law." *Anderson*, 271 N.W.2d at 376. The rationale for this legal principle is based upon the potential *in terrorem* effect of "bad faith" litigation upon the insurer. " 'An insurer should have the right to litigate a claim when it feels there is a question of law or fact which needs to be decided before it in good faith is required to

pay the claimant.'" *Id.* 271 N.W.2d at 377 (quoting Thornton & Blaut, *in Bad Faith and Insurers: Compensatory and Punitive Damages,* 12 Forum 699, 719 (1977)).

*Chester v. State Farm Ins. Co.,* 117 Idaho 538, 789 P.2d 534 (App.1990), cited by PMI, is unavailing. The New Jersey Supreme Court, in *Pickett,* used *Chester* as an example of the "fairly debatable" standard. *Pickett,* 131 N.J. at 473, 621 A.2d 445. While it is true that the Idaho Court of Appeals upheld the jury's "bad faith" award, that award was based, not upon the issue which the court considered "fairly debatable," a question of contract interpretation, but rather upon the insurer's unreasonable delay in processing plaintiff's other "undisputed claims." Thus, plaintiff mischaracterizes *Chester* when it offers it as an example of a case in which the existence of a legal question barred summary judgment on a "bad faith" claim.

■ In this case, the evidence developed by Aetna's own investigation, as supplemented by the investigation conducted by the Trenton Police Department, raised serious questions about the nature and origins of the fire, and Polizzi's possible involvement, as well as his apparent motive and opportunity. Moreover, the explanation of the application of the "fairly debatable" standard by the New Jersey Supreme Court in *Pickett,* 131 N.J. at 473, 621 A.2d 445, as well as this court's disposition of PMI's cross-motion for partial summary judgment on the coverage issue,[4] lead inexorably to the conclusion that Aetna is entitled to partial summary judgment on PMI's claim for "bad faith" damages.

Because PMI cannot demonstrate that Aetna lacked at least a "fairly debatable" basis in fact upon which to deny coverage, PMI cannot succeed on its claim for "bad faith" damages. Accordingly, Aetna's motion for partial summary judgment on the issue of "bad faith" damages will be granted.

### 2. Punitive Damages

■ It has long been established in New Jersey that the duties of an insurer presented with a first-party claim for loss are a matter of contract law, and that punitive damages are, therefore, generally not recoverable. *See* George J. Kenny & Frank A. Lattal, *New Jersey Insurance Law* § 5.19 (1993). *See also Pierzga v. Ohio Casualty Group of Insurance Companies,* 208 N.J.Super. 40, 504 A.2d 1200 (App.Div.), *certif. denied,* 104 N.J. 399, 517 A.2d 402 (1986); *Ellmex Construction Co. v. Republic Insurance Co.,* 202 N.J.Super. 195, 494 A.2d 339 (App. Div.1985), *certif. denied,* 103 N.J. 453, 511 A.2d 639 (1986); *Milcarek v. Nationwide Insurance Co.,* 190 N.J.Super. 358, 463 A.2d 950 (App.Div.1983). The New Jersey Supreme Court's most recent comment on this distinction was made in *Pickett,* when the court observed that "in order to sustain a claim for punitive damages, a plaintiff would have to show something other than a breach of the good-faith obligation as we have defined it." *Pickett,* 131 N.J. at 475–76, 621 A.2d 445 (citing *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 477 A.2d 1224 (1984)). That "something" else has been described as "egregious circumstances." *Id.* In *Nappe,* the New Jersey Supreme Court held that, in order to support an award of punitive damages, a defendant's conduct must be "wantonly reckless or malicious." *Nappe,* 97 N.J. at 49–50, 477 A.2d 1224.

Clearly, PMI has alleged "malicious" behavior by Aetna in its complaint. Complaint, Second Count. However, in its answer to Aetna's fourth Interrogatory, which requested facts upon which PMI based its claim for punitive damages, PMI promised to provide such facts "at the conclusion of all discovery." Aetna's Rule 56 Brief, exhibit II. Discovery is closed and plaintiff has not offered to amend its answer to defendant's interrogatory.

Counsel for PMI makes no distinction between the standard for consequential damages, which was established for the first time in *Pickett,* and the higher standard for an award of punitive damages, which was discussed in *Pickett. Pickett,* 131 N.J. at 475–76, 621 A.2d 445. As a result, counsel seems to be arguing that this court should not dismiss plaintiff's claim for punitive damages

---

4. *See infra* part III.B.

because plaintiff has a viable claim for "bad faith" consequential damages. Whether this contention is simply a lapse in logic, or an awkward attempt to camouflage the weakness of plaintiff's claim, counsel completely fails to address the standard of "egregious circumstances" required by the New Jersey Supreme Court to support an award of punitive damages.

Moreover, plaintiff points to nothing in the summary judgment record to support its claim for punitive damages. "A motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). PMI bears the burden at trial of presenting facts sufficient to support a claim for punitive damages, facts tending to show malice on Aetna's part. PMI has not invited this court's attention to a single fact in the summary judgment record upon which it plans to rely at trial in support of its claim for punitive damages. Accordingly, Aetna will be granted partial summary judgment on plaintiff's claim for punitive damages.

### B. PMI's Cross–Motion for Partial Summary Judgment

■ Under the standard for summary judgment set forth above, this court must first inquire whether there are any genuine, material factual issues which preclude a summary adjudication. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. A material factual issue is one which "might affect the outcome of the suit." *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir.1995). Whether the fire at PMI's headquarters was caused by accident or arson is a material factual issue in this case.

PMI contends that it is entitled to partial summary judgment on the issue of Aetna's liability for the insurance proceeds because the fire was not incendiary in origin. PMI's Rule 56 Brief at 9–13. Interestingly, PMI admits that there is a dispute between the investigators as to whether the fire had two or three distinct points of origin,[5] but nowhere asserts that the fire had a single point of origin. *Id.* at 9–10. However, PMI offers the testimony of Battalion Chief, Frank Zoda, of the Trenton Fire Department, who was on the scene while firefighters extinguished the Hamilton Avenue fire, whose initial report stated that an electrical cause was "possible." *See* PMI's Rule 56 Brief, exhibit E (Dep. of Frank Zoda), at 123; *and id.,* exhibit F.

■ Notwithstanding this manifest factual dispute, which emerges from PMI's own brief, and which goes to what is arguably the most hotly disputed issue in this case, PMI contends that it can prevail on summary judgment. PMI's counsel argues that because of a lack of "scientific proof" of the fire's causation, none of Aetna's witnesses may testify at trial. PMI's Rule 56 Brief at 11–13. This astounding contention is based on a seriously flawed reading of the United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *Daubert* addresses the standards to be applied by a trial judge when faced with a proffer of expert scientific testimony based upon an novel theory or methodology. *See Lappe v. American Honda Motor Co.,* 857 F.Supp. 222, 228 (N.D.N.Y.1994), *aff'd sub nom. Lappe v. Honda Motor Co. Ltd. of Japan,* NO. 95–7389, 1996 WL 170209 (2d Cir. April 11, 1996). Nothing in *Daubert* suggests that trial judges should exclude otherwise relevant testimony of police and fire investigators on the issues of the origins and causes of fires. *See, e.g., United States v.*

---

**5.** George Lenhardt, Mercer County Fire Marshall, testified that the fire had three distinct points of origins and that no accidental cause would explain the damage in the different areas. Aetna's Rule 56 Brief, exhibit E (Dep. of George Lenhardt), at 24–25, 27. Trenton police detective Edgar Rios concurred in finding three distinct points of origin. Aetna's Rule 56 Brief, exhibit G (Dep. of Edgar Rios), at 24–26. Rincones, Aetna's own investigator, testified to only two points of origin. Aetna's Rule 56 Brief, exhibit H (Dep. of Peter Rincones), at 144.

*Markum,* 4 F.3d 891, 895–96 (10th Cir.1993) (discussing *Daubert* standard in context of firefighter's testimony as to cause of fire); *cf. American Technology Resources v. United States,* 893 F.2d 651 (3d Cir.) (holding that expert's qualification can be based on practical experience as well as academic training and credentials), *cert. denied,* 495 U.S. 933, 110 S.Ct. 2176, 109 L.Ed.2d 505 (1990).[6]

In sum, Aetna has pointed to evidence tending to show the suspicious nature of the Hamilton Avenue blaze. Plaintiff contests the assertion that the fire was the result of arson. Accordingly, there are genuine issues of material fact relating to Aetna's asserted reasons for its denial of coverage.

■■■ PMI also argues that Aetna has waived its right to deny, or is estopped from denying, coverage by virtue of its partial payment of $100,000.00. PMI's Rule 56 Brief at 15–18. This argument is meritless. Waiver is the intentional relinquishment of a known right. *Shebar v. Sanyo Business Systems Corp.,* 111 N.J. 276, 291, 544 A.2d 377 (1988). There has been no waiver in this case. Aetna expressly reserved its rights in the March 15, 1993 letter from Ciaramella to PMI's adjuster, which immediately followed the $100,000.00 payment. NJNB's Rule 56 Brief, exhibit J. Furthermore, as this letter makes clear, PMI was then under a May deadline for submitting its proofs of loss. *Id.* PMI could not realistically have understood the $100,000.00 partial payment to be a signal of Aetna's willingness to pay the underlying claim several months before PMI had submitted its complete proofs of loss.

Estoppel is an equitable doctrine designed to protect an innocent party from prejudice resulting from an unwitting reliance on another party's misrepresentations. *Hakimoglu v. Trump Taj Mahal Assoc.,* 876 F.Supp. 625 (D.N.J.1994), *aff'd,* 70 F.3d 291 (3d Cir. 1995). PMI asserts that it was prejudiced by

Aetna's "delay" in completing its investigation, so that its position was compromised between the extension of the advance in March, 1993, and the final denial of coverage, almost six months later. At best, these allegations are far too vague to establish the absence of any genuine issues of material fact regarding prejudice to PMI.

■■■ Finally, PMI argues that even if it were proved that Salvatore Polizzi had somehow been involved in causing the fire, that fact would not bar PMI from recovering the insurance proceeds. PMI's Rule 56 Brief at 18. The question whether, in all instances, intentional arson by a corporate officer or minority shareholder precludes recovery by the insured corporation is an unsettled issue in New Jersey. *See Sassano v. BLT Discovery, Inc.,* 245 N.J.Super. 539, 550 n. 3, 586 A.2d 307 (App.Div.1991) (discussing numerous apparently contradictory New Jersey rulings). *Compare Italian Fisherman v. Commercial Union Assurance Co.,* 215 N.J.Super. 278, 282, 521 A.2d 912 (App.Div.) (holding that arson committed by "principal managing agent" of a closely-held corporation precludes recovery of fire insurance proceeds by the corporation), *certif. denied,* 107 N.J. 152, 526 A.2d 211 (1987), *with, Ambassador Ins. Co. v. Montes,* 76 N.J. 477, 483, 486 n. 3, 388 A.2d 603 (1978) (citing, with approval, *Fidelity–Phenix Fire Ins. Co. v. Queen City Bus & Transfer Co.,* 3 F.2d 784 (4th Cir.1925)), in which the president of a corporation, who owned 25% of the outstanding capital stock, intentionally set fire to a motor bus owned by the corporation; wherein the fire insurance company was compelled to pay the proceeds to the corporation for the benefit of creditors and stockholders other than the wrongdoer.

Happily, it is unnecessary for this court to reach this unsettled question of New Jersey law in order to decide the present motion.

---

**6.** Fed.R.Evid. 702 requires only that an expert have "scientific, technical, or other specialized knowledge" that may be useful to the trier of fact, and that the opinion was gained "by knowledge, skill, experience, training, or education." Fed.R.Evid. 702.

Furthermore, not all witnesses who offer opinion testimony at trial must qualify as experts. Rule 701 permits lay opinion testimony, even as

to an ultimate issue in the case, when the testimony is helpful and is "rationally based on the perception of the witness." Fed.R.Evid. 701. *See also Asplundh Mfg. Div. v. Benton Harbor Eng'g,* 57 F.3d 1190, 1201–02 (3d Cir.1995) (holding that lay opinion as to causation may be admitted when the witness possesses "sufficient and relevant specialized knowledge or experience to offer the opinion").

Aetna's August 31, 1993, letter clearly bases its denial of coverage, in part, on Aetna's conclusion that "one and/or both of the insureds, acting alone and/or in collusion with others, were fraudulently connected with [the fire]."[7] Aetna's Rule 56 Brief, Exhibit B, at 2. Thus, a genuine issue of material fact exists regarding whether Mary Ann Polizzi was involved in the alleged arson, or whether she is an innocent coinsured.

Because, as to each of PMI's asserted bases for summary judgment, there remain genuine issues of material fact, PMI's motion for partial summary judgment as to liability must be denied.

### C. Aetna's Motion for Separate Trials

As noted at the outset of this opinion, Aetna has moved for separate trials on the coverage issues and the bad faith/punitive damages issues. Because this court will grant Aetna's motion for partial summary judgment as to both of these issues, there is no need to decide the question of a separate trial. Accordingly, the court will dismiss Aetna's motion for separate trials as moot.

## IV. Conclusion

For the reasons set forth above, the motion of defendant, Aetna Life & Casualty Co., for partial summary judgment barring recovery of bad faith damages and punitive damages will be granted. The cross-motion of plaintiff, Polizzi Meats, Inc., for partial summary judgment on liability will be denied. The remaining motions, by Aetna and NJNB for separate trials and by NJNB for summary judgment will be dismissed as moot. The court will enter an appropriate order.

### OPINION ON REARGUMENT

Plaintiff, Polizzi Meats, Inc. ("PMI"), filed this action against Aetna Life and Casualty

Company ("Aetna"), seeking a declaratory judgment that PMI was covered for losses arising out of a fire at its place of business, under a policy of insurance issued by Aetna. On June 19, 1996, this court filed an Opinion and Order denying summary judgment to PMI, and granting partial summary to Aetna on the issues of "bad faith" damages and punitive damages.

Plaintiff has filed a motion for reargument, pursuant to Rule 12I. of the General Rules of the United States District Court for the District of New Jersey ("General Rule 12I.").[1] This motion is limited to the issue of consequential damages for "bad faith."

The facts and procedural history of this case are fully set forth in the Opinion of this court filed concurrently with the court's June 19, 1996, Order. Because plaintiff has failed to demonstrate that this Court overlooked any dispositive factual matters or controlling decisions of law in reaching its June 19, 1996 decision, plaintiff's motion for reargument pursuant to General Rule 12I., will be denied.

## I. Standard for Reargument Under General Rule 12I.

 General Rule 12I., which is denominated "Motions for Reargument," provides that a party may, within ten days of entry of an order adverse to that party, move for reconsideration, upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. A motion under General Rule 12I. "is an extremely limited procedural vehicle" and may not be used to expand the record on reargument. *Resorts Int'l v. Greate Bay Hotel and Casino*, 830 F.Supp. 826, 831 (D.N.J.1992).[2] Moreover,

---

**7.** Aetna also denied coverage on the ground that one, or both, of the insureds intentionally misrepresented facts relating to the claim.

**1.** General Rule 12I. provides that:

A motion for reargument shall be served and filed within 10 days after the entry of the order or judgment on the original motion by the Judge or Magistrate. There shall be served with the notice a brief setting forth concisely

the matters or controlling decisions which counsel believes the Judge or Magistrate has overlooked. No oral argument shall be heard unless the Judge or Magistrate grants the motion and specifically directs that the matter shall be reargued orally.

**2.** In support of reconsideration, plaintiff attaches a report of its expert, Dr. Richard B. Thomas, which contests the conclusions of defendant's experts as to the source of the fire which de-

relief under the rule is granted "very sparingly." *Maldonado v. Lucca*, 636 F.Supp. 621, 630 (D.N.J.1986). The word "overlooked" is the operative term in the rule. *See* Allyn Z. Lite, *New Jersey Federal Practice Rules (1996 Edition)*, cmt. to Rule 12, at 81.

 Furthermore, a party's disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for reargument. *Bermingham v. Sony Corp.*, 820 F.Supp. 834, 859 n. 8 (D.N.J.1992), *aff'd*, 37 F.3d 1485 (3d Cir.1994); *Florham Park Chevron v. Chevron, U.S.A.*, 680 F.Supp. 159, 162 (D.N.J.1988). Finally, only if the matters which were overlooked, if considered by the Court, might reasonably have resulted in a different conclusion will the court entertain such a motion. *Panna v. Firstrust Savings Bank*, 760 F.Supp. 432, 435 (D.N.J.1991).

## II. Discussion

Plaintiff takes issue with this court's interpretation of *Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445 (1993). In *Pickett*, the New Jersey Supreme Court, for the first time, held that a plaintiff may recover incidental damages for the insurer's "bad faith" failure to settle a claim. The New Jersey Supreme Court specified, however, that no liability for "bad faith" would lie against an insurer, unless the insured could demonstrate that "no debatable reasons existed for denial of the benefits" available under the policy. *Id.* at 481, 621 A.2d 445. In clarifying this standard, the court set forth the following example:

> Perhaps the rule is easiest to understand in the context of the denial of benefits on the basis of noncoverage, such as for experimental surgery under a medical-insurance policy. Under the "fairly debatable" standard, a claimant who could not have established as a matter of law a right to summary judgment on the substantive

claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim.

*Id.* at 473, 621 A.2d 445. Plaintiff contended that summary judgment on a "bad faith" claim was never appropriate. This court disagreed. Following *Pickett*, this court explained, in its June 19, 1996 Opinion, that PMI's failure to demonstrate its entitlement to summary judgment on the issue of Aetna's liability for coverage, a summary judgment which PMI affirmatively sought and had every incentive to pursue aggressively, led necessarily to the conclusion that "bad faith" damages could not be recovered from Aetna.

In its brief in support of this motion, plaintiff relies almost entirely on a single decision of the Superior Court of New Jersey, which plaintiff contends strongly supports PMI's view of *Pickett*. *See Miglicio v. HCM Claim Management Corp.*, 288 N.J.Super. 331, 672 A.2d 266 (L.Div.1995).

### A. Application of the Standard for Reargument

 It must be noted at the outset that *Miglicio* was decided on September 12, 1995, and was published in the advance sheets of the New Jersey Superior Court Reports on April 12, 1996. The original summary judgment motion package in this case was filed, pursuant to General Rule 12N., on April 25, 1996. General Rule 12I. explicitly invites counsel to draw the court's attention to decisions which may have been overlooked by the court, not those which were overlooked by counsel. It is not the purpose of General Rule 12I. to allow the losing party on a motion an opportunity to supplement its brief on the issues presented in the original motion. A motion for reargument is not to be used " 'to ask the Court to rethink what it ha[s] already thought through—rightly or wrongly.' " *Oritani Sav. & Loan Assoc. v. Fidelity & Deposit Co.*, 744 F.Supp. 1311,

---

stroyed PMI's building. This report, although made a part of the Joint Final Pretrial Order, was not referred to at all in the plaintiff's original moving papers on summary judgment and will not be considered on this motion. *See Resort's Int'l*, 830 F.Supp. at 831. Notably, Dr. Thomas's report is dated June 7, 1995. If plain-

tiff's counsel chose not to include this report in support of plaintiff's motion for partial summary judgment, it cannot now ask the court to consider it on a motion for reargument. *See DeLong Corp. v. Raymond Int'l, Inc.*, 622 F.2d 1135, 1140 (3d Cir.1980).

1314 (D.N.J.1990) (quoting *Above the Belt v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983), *rev'd on other grounds,* 989 F.2d 635 (3d Cir.1993)).

Furthermore, General Rule 12I. specifically refers to "controlling decisions" of law which have been overlooked. A decision of a New Jersey trial court is not "controlling" for the simple reason that it is not binding on this court. When this court sits in diversity, it is bound by the decisions of highest court of the state whose substantive law this court must apply. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This court is guided, but not bound, by the rulings of the lower New Jersey appellate courts, which may provide "indicia of how the state's highest court might decide" an issue. *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3d Cir.1981); *see also Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3d Cir.1991); *Butler v. Sherman, Silverstein & Kohl, P.C.,* 755 F.Supp. 1259 (D.N.J.1990). Decisions of a state trial court may be considered, if they shed some light upon the subject, but are not binding. *See* 19 Charles A. Wright, et al., *Federal Practice and Procedure* § 4507, at 96 (1982).

### B. The Miglicio Decision

Unhappily for PMI, its reliance on *Miglicio* is unavailing. *Miglicio* does not even disagree with, much less contradict, this court's application of the standard articulated by the New Jersey Supreme Court in *Pickett.* Indeed, *Miglicio* states that "[i]f a claim is fairly debatable, no ['bad faith'] liability arises." *Miglicio,* 288 N.J.Super. at 342, 672 A.2d 266.

*Miglicio* concerned, *inter alia,* an insurer's motion for summary judgment on the plaintiff's claim for "bad faith" damages and punitive damages. In *Miglicio,* the plaintiff, as the result of a prior arbitration, was awarded $35,000.00, which represented the entire amount of the claim for underinsured motorist ("UIM") benefits which the plaintiff had filed with her insurer. The insurer, however, only offered $35,000.00 in settlement of the claim, "including the allegations of bad faith and claims for fees and cost." *Miglicio,* 288 N.J.Super at 337, 672 A.2d 266.

Plaintiff sought her relief in court. The Law Division entered judgment for $35,-000.00 in favor of the plaintiff on her UIM claim. Because payment to the plaintiff for the UIM claim was pending at the time the Law Division considered defendant's motion for summary judgment on the damages issues, the court declared that the insurer's summary judgment challenge on the issue of liability on the UIM claim was "moot." *Id.* at 338, 672 A.2d 266. The Law Division concluded that the plaintiff could make out a claim for "bad faith" damages based on the delay in payment of her claim, and denied summary judgment for the insurer.

PMI contends that *Miglicio* supports its assertion that the issue of an insurer's "bad faith" can never be decided on summary judgment. *Miglicio,* however, does not support plaintiff's view. Indeed, *Miglicio* is in perfect harmony with *Pickett* and this court's June 19, 1996, Opinion.

Plaintiff cites the following sentence from *Miglicio:* "Whether the conduct of the defendant resulted in delays in acknowledging the claim and offering payment is fairly debatable and is for the jury to consider under these circumstances," *Miglicio,* 288 N.J.Super. at 343, 672 A.2d 266. Plaintiff concludes that this sentence "makes it clear that whether or not the matter at issue is 'fairly debatable' is a fact question for the jury to determine and thus cannot be resolved by summary judgment." Plaintiff's Brief on Reargument at 3. Plaintiff has clearly misread the above quoted sentence. The Law Division held that, *because* the issue of the insurer's conduct was "fairly debatable," it must be resolved by a jury. The court itself determined that the issue was fairly debatable, thus allowing the question to go to the jury. Moreover, the issue the *Miglicio* court is addressing is the issue of whether the insurer acted in bad faith. The court is not discussing the issue of the *insurer's liability on the underlying claim,* the polestar of the *Pickett* analysis. It is perhaps unfortunate that the Law Division chose the words "fairly debatable" to describe its evaluation of whether there was sufficient evidence to sup-

port the plaintiff's claim for "bad faith" damages. Notwithstanding the court's choice of words, its discussion of this issue was clearly the second step in a two-step process, the first step having been the court's conclusion that there was nothing "fairly debatable" about the claim for UIM coverage.

The court in *Miglicio*, in considering the insurer's motion to dismiss the "bad faith" claim, might have asked whether the plaintiff could "have established as a matter of law a right to summary judgment on the substantive claim." *Pickett* at 473, 621 A.2d 445. The answer would have been simple. The plaintiff, in fact, possessed a judgment on the substantive claim. By contrast, in this case, PMI moved for summary judgment on its substantive claim, which this court denied. Accordingly, the plaintiff in *Miglicio* was entitled to take the issue of the insurer's "bad faith" to the jury, and PMI, in this case, is not.

For the foregoing reasons, plaintiff's motion for reargument will be denied. The court will enter an appropriate order.

Dated: August 2, 1996